# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAWAN SMITH,

        Petitioner,        Case Number: 2:06-CV-11626

v.        HONORABLE ARTHUR J. TARNOW

JAN TROMBLEY,

        Respondent.
_____/

## AMENDED[1] OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Dawan Smith a state inmate incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for felony murder, assault with intent to commit murder, and felony firearm. For the reasons set forth below, the Court denies the petition.

### I. Background

Petitioner's convictions arise from a robbery and shooting that occurred at a Coney Island restaurant in the City of Detroit on April 28, 2002. During the course of the robbery, Rrok Luljcira was shot and killed and Llesh Rasi was shot and seriously injured. Petitioner was jointly tried with co-defendant Dyanna McDade (Dyanna).

Dalayna McDade, Dyanna's sister testified that at some point after the shooting, she learned that her sister was being held at the Wayne County Jail. She visited her sister there and Dyanna told her that Petitioner was involved in the shooting. Dalayna then spoke with Petitioner

---

[1] An amended opinion is issued to replace the word "after" with the word "hour" in the sixth sentence of the first full paragraph on page 2.

who said, "I did everything she didn't do anything." Tr., Vol. I, at p. 110. Dalayna did not immediately tell police about her conversations with Dyanna and Petitioner because her sister asked her not to do so. About one month after the shooting, she told police about these conversations.

Llesh Rasi testified that he was a cook at the restaurant. On the day of the shooting, he started working at midnight. The door from the restaurant to the outside was kept unlocked, but the door to the area containing the cash registers and kitchen was always kept locked. At approximately 4:00 a.m., Luljcira opened the door to the back area to let Dyanna in. Dyanna told Rasi she would be working with him. She proceeded to take orders for approximately one-half hour. Then, she opened the door separating the back area from the restaurant and allowed a man to enter. The man started shooting. Rasi testified he was shot in the face. At trial, Rasi identified Petitioner as the shooter, but he failed to identify Petitioner at a pretrial lineup.

Dr. Poguslaw Pietak, assistant Wayne County medical examiner, testified that he performed an autopsy on Luljcira. Dr. Pietak testified that Luljcira died from a single gunshot wound to the head.

Police officer Billy Jackson testified that he obtained a custodial statement from Petitioner in which Petitioner admitted to being at the restaurant on the night of the shooting. He claimed he and Dyanna went to the restaurant at approximately 1:00 a.m., and that she helped take some orders and he played video games while she did so. Shortly after arriving at the restaurant, he went home to sleep. He did not learn about the shooting until Dyanna called him at approximately 10:00 a.m., that morning.

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of felony murder, assault with intent to murder, armed robbery, and felony firearm. On October 25, 2002, he was sentenced to life imprisonment for the murder conviction, 18-3/4 to 30 years for the assault conviction, 10 to 30 years for the armed robbery conviction, all to be served concurrently with one another and consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

> I. Does the constitutional protection against double jeopardy involving multiple punishment for the same offense require the court to modify the judgment of sentence in felony murder to vacate the separate sentence for armed robbery involving the same decedent?
>
> II. Did the prosecutor violate Mr. Smith's state and federal constitutional due process rights to a fair trial when in closing argument he improperly vouched for the star witness and argued facts not in evidence?
>
> III. When the only eyewitness identification in this case came at trial after the witness failed twice previously to identify Mr. Smith as his assailant, did the trial court err in refusing to instruct the jury,, consistent with *People v. Anderson*, on the inherent unreliability of eyewitness identification testimony?

The Michigan Court of Appeals vacated Petitioner's conviction for armed robbery and affirmed his remaining convictions. *People v. Smith*, No. 246809 (Mich. Ct. App. June 8, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals, with the exception of the double jeopardy claim. The Michigan Supreme Court denied leave to appeal. *People v. Smith*, 471 Mich. 954 (Mich. 2004).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims raised in the Michigan Supreme Court.

**Standard of Review**

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11.

## Discussion

### A. Alleged Prosecutorial Misconduct

Petitioner alleges that the prosecutor engaged in misconduct by improperly vouching for the credibility of the prosecution's key witness, Dalayna McDade, during closing argument, and by arguing facts not in evidence.

Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

First, Petitioner argues that the prosecutor improperly vouched for the credibility of prosecution witness Dalayna McDade, who is the sister of Petitioner's co-defendant. Specifically, Petitioner objects to the following portion of the prosecutor's closing argument:

> . . . . put (sic) evidence in this case, proves beyond a reasonable doubt that defendant Smith is guilty of committing this crime, because Dalayna Smith – Dalayna McDade has told you that. He admitted to her that he was the shooter and her testimony is believable.

Tr., Vol. IV at 118.

Petitioner also objects to the following portion of the prosecutor's rebuttal argument:

> You can imagine what it must feel like for a sister to testify against her own sister. That's a big step. One that probably none of us can comprehend. That shows you that she is being honest and truthful.

*Id.* at 150.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" *U.S. v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004), *quoting U.S. v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001). In this case, the prosecutor merely explored Dalayna McDade's motives for testifying. He did not place the prestige of the prosecutor's office behind Dalayna's testimony. The prosecutor's challenged comments, read in the context of the entire closing and rebuttal arguments, do not amount to the prosecutor vouching for Dalayna's credibility. Immediately before and after making the first challenged statement, the prosecutor explored Dalayna's motivations for testifying. He juxtaposed her motives for telling the truth with her motives for lying and asked the jury to conclude that her motives for telling the truth clearly outweighed her motives for lying. He argued that she gained nothing from her testimony. This does not amount to improper vouching.

6

Second, Petitioner claims that the prosecutor argued facts not in evidence when, in his rebuttal argument, he attempted to explain that no evidence was obtained pursuant to the search warrant executed at Petitioner's home because the victim was in the hospital undergoing surgery and the police had not yet had an opportunity to determine what type of clothing the shooter was wearing. The prosecutor also argued that a gun was never located because it would be logical for the perpetrator to discard the gun. Petitioner argues that, because no testimony was adduced regarding whether police knew what clothing the shooter was wearing when they executed the search warrant or regarding what happened to the gun, the prosecutor committed misconduct by asserting these arguments.

"[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." Bates v. Bell, 402 F.3d 635, 646 (6th Cir.2005). However, "counsel cannot misstate evidence." United States v. Carter, 236 F.3d 777, 784 (6th Cir.2001). In this case, the prosecutor's argument asked the jury to draw reasonable inferences based upon the testimony presented. Therefore, the Court finds that his arguments were not inappropriate.

### B. Jury Instructions

In his second claim, Petitioner argues that the trial court erred in refusing to instruct the jury on the inherent unreliability of eyewitness testimony. One of the victims, Rasi, failed to identify Petitioner at a live line-up and at the preliminary examination. At trial, Rasi, for the first time, identified Petitioner as the shooter. Petitioner argues that these inconsistencies warranted the requested instruction.

7

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, held that a special jury instruction regarding the unreliability of eyewitness identification testimony is not required under Michigan law. *Smith*, slip op. at 2. Petitioner argues that the Michigan Supreme Court's decision in *People v. Anderson*, 389 Mich. 155 (1973), *overruled on other grounds by People v. Hickman*, 470 Mich. 602 (Mich. 2004), required an instruction regarding the inherent unreliability of eyewitness testimony. In *People v. Cooper*, 236 Mich.App. 643, 656 (Mich. Ct. App. 1999), the Michigan Supreme Court held that *Anderson* does not require any special jury instruction regarding the manner in which a jury should treat eyewitness identification testimony.

Moreover, habeas relief may only be granted for violations of federal law. "[F]ederal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Federal courts, on habeas review, may not review a state court decision on purely state law issues. *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). An instruction on the relative reliability of eyewitness testimony is not required by the Constitution, nor is there any clearly

8

established Federal law requiring such an instruction. *Schnorr v. Lafler*, No. 05-74644, 2008 WL 1766669, *11, n.4 (E.D. Mich. Apr. 17, 2008). Therefore, this claim does not entitle Petitioner to habeas corpus relief. *See Samu v. Elo*, 14 Fed. App'x 477, 478 (6th Cir. 2001) (holding habeas petitioner not entitled to relief on claim that trial court failed to give requested instruction where petitioner identified no clearly established federal law requiring the giving of such an instruction).

### III. Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

                                                                S/Arthur J. Tarnow
                                                                Arthur J. Tarnow
                                                                United States District Judge

Dated: October 2, 2008

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 2, 2008, by electronic and/or ordinary mail.

                                                               S/Catherine A. Pickles
                                                               Judicial Secretary